IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KARICE GOSS, individually and on behalf of all others similarly situated, ) ) ) *Plaintiff*, ) ) v. ) ) GARY A. SMILEY, ATTORNEY AT ) LAW, ) ) *Defendant*. ) | Civil Action No. 18-cv-07407 Hon. Judge Gary Feinerman |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Plaintiff, Karice Goss, individually and on behalf of others similarly situated, by and through her attorneys, Community Lawyers, LLC., and for her Response to Defendant's Motion to Compel Arbitration:

**INTRODUCTION**

Plaintiff filed her First Amended Complaint in this class action on May 13, 2019 alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. ("FDCPA"). (Dkt. #25, First Amended Complaint). Plaintiff's claims arise from a letter sent by Gary Smiley ("Defendant") on or around November 7, 2017. On July 16, 2019, Defendant filed a Motion to Compel Arbitration ("Defendant's Motion") in the above-captioned case. (Dkt. #36).

In his Motion, Defendant states that he was assigned Plaintiff's AAA account for the purpose of debt collection. (Motion, Dkt. #37, Pg. 4). Defendant first claims that the agreement is valid and enforceable because it meets the three elements required for enforcement. Second, Defendant claims that he is entitled to enforce the Note even though he is not a party to the agreement. Third, Defendant argues that he is entitled to enforce the agreement as AAA's agent.

1

Lastly, Defendant claims that Plaintiff is equitably estopped from objecting to arbitration of her claim.

None of these statements actually prove that Defendant was in fact validly assigned all rights to Plaintiffs' respective accounts, including the right to enforce the arbitration provisions in the agreements for debt collection purposes. As will be shown below, Plaintiff has not admitted or conceded that Defendant was validly assigned the accounts and all rights thereunder, including the right to enforce the arbitration provisions. Defendant has further failed to prove that valid arbitration provisions exists, that govern Plaintiffs' claims, or that Defendant has been assigned the accounts and has the right to enforce the arbitration provisions. Finally, Defendant has effectively waived his right to request arbitration by proceeding with litigation to this point in time. Therefore, Defendant's Motion and request to proceed with arbitration must be denied and Plaintiff's claims should be permitted to proceed to litigation.

## **LEGAL STANDARD**

In order for a court to compel arbitration, the court must decide (1) whether a valid arbitration agreement exists, and (2) whether the arbitration agreement applies to the particular dispute. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). Courts have found that, under the Federal Arbitration Act, "district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Parties cannot be compelled to submit a claim to arbitration for claims that they have not agreed to submit to arbitration. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).

In determining whether arbitration should be compelled, courts should apply state contract law. *First Options v. Kaplan*, 514 U.S. 938, 944 (1995). Arbitration agreements can be "invalidated

by 'generally applicable contract defenses.'" *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 333 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687(1996)).

# ARGUMENT

## I. Plaintiffs' Claims Are Outside the Scope of the Arbitration Provisions

Defendant cites to *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017) to state that arbitration should be compelled if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Id*. Defendant's argument fails on one crucial point. The scope of the Agreements do not cover Plaintiff's claims under the FDCPA. The Agreements referenced in Defendant's Motion include arbitration clauses intended to cover claims between AAA Checkmate LLC ("AAA") and the respective consumer. In fact, it appears from the agreement that the arbitration clauses were intended to cover disputes regarding the manner in which the accounts would be handled by the consumer and AAA, respectively, as creditors. The agreement states that "claim" means any dispute, claim or controversy between "you and us." (See Defendant's Exhibit 1, p. 3.) Thus, any claim that would be subject to arbitration could be brought by either creditor, or the consumer, against the other.

Plaintiff's claim is not one that could be brought against the original creditor, AAA, because the respective creditors are not debt collectors as defined by the FDCPA. Plaintiff's claims arise under the FDCPA, which provides the definition of a creditor, such as Creditor, as:

> **. . . any person who offers or extends credit creating a debt or to whom the debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.**

15 U.S.C. § 1692a(4).

3

Distinct from its definition of a "creditor," the FDCPA further provides a definition of a "debt collector," such as Defendant, as:

> **. . . any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.**

15 U.S.C. § 1692a(6).

The FDCPA only regulates conduct of "debt collectors," and distinguishes "debt collectors" from "creditors." *Ruth v. Triumph P'ships*, 577 F. 3d 790, 796 (7th Cir. 2009). Thus, a claim under the FDCPA could only be brought against a debt collector, and not against a creditor, thereby falling outside the scope of an arbitration agreement with a creditor, as a consumer's FDCPA claims "are not even the type that could be asserted in defense against a creditor suing on a breach of the cardholder agreement." *Fox v. Nationwide Credit*, 2010 WL 3420172, at *6 (N.D. Ill. Aug. 25, 2010).

Here, as in *Fox*, Plaintiffs' claims are not based on the terms of the contract between Plaintiff and AAA. This claim is based on Defendant's violation of the FDCPA because the letter he sent stated that late charges could be added to the debt, despite his lack of authority to do so. Plaintiff's use of the acceleration provision merely demonstrates this violation, but it is not the basis of the claim. The core of the case is Defendant's letter to Plaintiff. This is not the kind of claim that could have been brought against AAA. *Fox,* 2010 WL 3420172, at *6. *See also Koval v. Fin. Corp. of America*, No. 16-cv-4093 (NDIL) (finding plaintiff's claim beyond the scope of the arbitration agreement because the agreement was "obviously intended" to cover disputes between plaintiff and original creditor, and plaintiff's claim was based on defendant's imposition of a fee unrelated to services provided by original creditor). Similar to the claims in *Koval*, Plaintiff's FDCPA claims do not fall within the scope of the arbitration provisions of the

4

Agreements, and as such, Defendant cannot enforce the arbitration provisions to compel Plaintiff to arbitrate her claims. *See also Cadiz v. Receivables Performance Mgmt. LLC*, Case No. 17-cv-2133 (N.D. Ill.) (Order, Dkt. #16, pp. 3-4) (finding that defendant was unable to establish the necessary burden that an arbitration clause was intended to encompass claims against assignees that could not have been brought against the original parties). Defendants' motion to compel arbitration should be denied.

## II. Defendant Has Not Proven He Has the Right to Enforce the Arbitration Provision.

Defendant seeks to enforce the arbitration agreement because he is entitled as AAA's agent. In his argument, Defendant cites to two Illinois cases to show that it is AAA's agent: *Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508, 512, 812 N.E.2d 534, 539 (2004) and *Lydon v. Eagle Food Ctrs.*, 397 Ill.App. 3d 90, 93, (Motion, Dkt. #37, p. ) Defendant misapplies its cases to the situation at hand. In *Lydon v. Eagle Food Ctrs.*, the appellate court of Illinois stated that the law of principal and agent applies to an attorney client relationship. *Id*. at 93. The following is the quote in full context. The courts define in more detail how agency works as it pertains to attorney-client relationships.

> To act for a client, an attorney must have either actual or apparent authority to do so. *Lydon*, quoting *Granite Properties*, 220 Ill. App. 3d at 713. If the agency relationship is so clear as to be undisputed, the issue may be decided as a matter of law. *Id*., quoting *Athanas v. City of Lake Forest*, 276 Ill. App. 3d 48, 54, 657 N.E.2d 1031, 212 Ill. Dec. 686 (1995). Normally, however, whether an agency relationship exists is a question for the trier of fact. *Id*., quoting *Granite Properties*, 220 Ill. App. 3d at 714. "The words and conduct of the alleged principal, not the alleged agent," create an agency relationship. *Id*., quoting First American Title Insurance Co. v. TCF Bank, 286 Ill. App. 3d 268, 274, 222 Ill. Dec. 39, 676 N.E.2d 1003 (1997). The party asserting the existence of an agency relationship must prove it by a preponderance of the evidence. *Id*. quoting *Granite Properties*, 220 Ill. App. 3d at 714.

*Lydon v. Eagle Food Centers, Inc.*, 297 Ill. App. 3d at 93.

Whether there is a proper agency relationship is determined by the trier of fact: the court. Defendant argues his claim further by providing this Court with various declarations, including one from Defendant himself stating that there was a relationship between AAA and Defendant that allowed for Defendant to act on the arbitration agreement on AAA's behalf. See Defendants Exhibit A, Declaration of Teresa Ramirez; See Exhibit B, Declaration of Alexis Zavala; See Exhibit C, Declaration of Stacie E. Barhost; See Exhibit D, Declaration of Gary Smiley. Only one declaration aside from Defendant's, that of Teresa Ramirez, speaks to Defendant's relationship as AAA's attorney from the perspective of AAA. See Defendants Exhibit A, Declaration of Teresa Ramirez. However, nowhere in the promissory note does it state that Defendant's agents would be allowed to enforce the agreement against Plaintiff. Even if the declarations are to be construed as proof of Defendant's agency relationship with AAA, this Court should find similarly to *Taylor v. Advanced Call Ctr. Techs., LLC*, 2017 U.S. Dist. LEXIS where the Court denied the defendant's motion to compel arbitration because, based on the state's law, an agency relationship does not generally give the agent the authority to enforce a contractual term for the agent's own benefit.

Illinois law is comparable. *Peach v. CIM Ins. Corp.*, 352 Ill. App. 3d 691, 696, 287 Ill. Dec. 701, 706 816 N.E.2d 668, 673 (2004) (refusing to extend arbitration option to defendant because an arbitration clause cannot generally be invoked by a nonsignatory.) This Court further clarified that, "a non-signatory may invoke the agreement when, under agency or related principles, the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *Griffis v. Wells Fargo Advisors, LLC*, 2014 U.S. Dist. LEXIS 90688, at *15-16 (N.D. Ill. July 3, 2014) The defendants in *Griffis* prevailed because Wells Fargo made material representations through its agent, the defendant. *Id*. at *15.

6

The claims against Wells Fargo and the agent were identical and the court found that was enough to establish a close enough relationship for the defendants to compel arbitration. There is no such similarity here. AAA is not a party to this suit and it was obvious that AAA was not speaking through Defendant when the letter contradicted the contract that Plaintiff signed with AAA. Additionally, the plaintiff in *Griffis* signed an arbitration agreement that stated that he agreed to arbitrate with not just Wells Fargo, but between him and "any other person." *Griffis*, 2014 U.S. Dist. LEXIS 90688 at *15. The arbitration agreement here is not as broad. It only applies to Plaintiff and the Lender. See Defendant's Exhibit 1. In fact, "us" is defined as the lender. See Exhibit 1, page 1. Defendant does not qualify under the "us" definition and this claim is not based on the agreement between Plaintiff and AAA. He is not an employee within AAA nor is he an individual who owns or manages a part of the company as evidenced by his own website.[1] The arbitration agreement also does not mention agents, which Defendant defined himself as per his Motion. (Motion, Dkt. #37, p. 5).

Defendant also states that Plaintiff is equitably estopped from invoking the acceleration provision while denying Defendant the right to invoke the arbitration portion of the Note. Defendant cites to *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp*. 659 F.2d 836, 838–39 (7th Cir. 1981) to state that "it is 'manifestly inequitable' to allow a party to rely on the terms of a contract for the basis of her claims against a non-party to the contract and at the same time argue that a non-party does not have the right to demand arbitration pursuant to a contract's arbitration clause." This is not the case here. *Hughes* as well as the other cases to which Defendant cites, *Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 889–90 (N.D. Ill. 2014); *Modern Space*

---

[1] The following link contains Defendant's business contact information. It is clear that he owns his own firm. http://www.lincolnsquare.org/list/member/gary-a-smiley-attorney-at-law-chicago-103

*Design & Decoration (Shanghai) Co. v. Lynch*, No. 13 C 4329, 2014 WL 4897322, at *5 (N.D. Ill. Sept. 29, 2014), involve breach of contract matter upon which the plaintiffs based their claims. *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 754 (7th Cir. 2017) is more analogous to Plaintiff's case. The plaintiff in *Scheurer* based her claim on federal employment discrimination laws and did not rely on the contract itself. *Id*. In fact, the *Scheurer* case was not a contract dispute at all. *Id*. Like *Scheurer*, the present case is not a breach of contract matter; it is a case involving a violation of the FDCPA. The acceleration provision is merely evidence that shows how Defendant violated the FDCPA, by attempting to charge late fees that he was not entitled to apply. The threat to apply late fees and charges to an alleged debt when a debt collector has no legal basis for doing so is a violation of §§1692e, 1692e(5), 1692e(10) and 1692f. Defendant violated the FDCPA when it sent a letter to Plaintiff that stated that additional fees may be applied to the original amount of the debt. These are amounts to which it is not entitled to on the basis of the acceleration agreement. It is for this reason that Defendant is liable under the FDCPA.

**III. Even If Defendants Can Enforce the Arbitration Provision in the Cardmember Agreements, Defendants Have Waived Their Right to Compel Arbitration.**

Defendant waived his right to compel arbitration when he elected to proceed in a judicial forum in an attempt to collect the alleged debt from Plaintiff. Defendant cites to *Halim v. Great Gatsby's Auction Gallery, Inc*., 516 F.3d 557 (7th Cir. 2008) to state that mere motion to dismiss does not warrant waiver of arbitration. *Id*. at 562 (quoting *Sharif v. Wellness Int'l Network, Ltd*., 376 F.3d 720, 726 (7th Cir. 2004). One must look closely to see the court's reasoning in *Halim*. First, the court looked to the defendant's filing a response within six weeks of the initial filing of the complaint as a key factor leading to the court's decision to deny the waiver argument. Defendant here has failed act with such expedition. Instead Defendant waited until after a default judgment was entered to file a motion to vacate, five months after the initial complaint was filed.

Defendant then filed a motion to dismiss for failure to state a claim. After Plaintiff filed an Amended Complaint, Defendant filed a motion for extension of time to file an answer and filed a second motion for extension shortly thereafter. Defendant then filed a third motion for extension of time to file an answer with the court. It wasn't until nine months after Plaintiff filed her initial Complaint that Defendant decided to attempt to compel arbitration. Defendant cannot proceed with the litigation process, then attempt to compel arbitration once he conveniently remembers that it is an option.

Courts may refuse to enforce arbitration agreements on a number of grounds, including waiver of the right to arbitrate. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods., Co., Inc.*, 969 F.2d 585, 587 (7th Cir. 1992). A waiver can be express or inferred, and whether a party waived its right to arbitrate is determined on a case-by-case basis as no "rigid rule" exists as to what constitutes waiver. *Id.* The Seventh Circuit has held that "an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate." *Cabintree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995). The essential question is whether, under the totality of the circumstances, the party acted inconsistently with the right to arbitrate. *Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638, 64 (7th Cir. 1981).

Defendant could have elected to have the dispute resolved by arbitration pursuant to the arbitration provision in the contact long before now. Instead, Defendant waited until Plaintiff filed a motion to enter default judgment to vacate said judgment. (Dkt. #18). Defendant then chose to file a motion to dismiss for failure to state a claim (Dkt. #21). Next, Defendant filed several extensions of time (Dkt. #27; Dkt. #30; Dkt. #33) before finally filing a motion to compel where he first mentions the arbitration provision. Said provision existed in the beginning of this suit and

9

could have asserted it where he chose to file a motion to dismiss. Defendant should not be permitted to pick and choose whether to enforce the arbitration agreement whenever it is to his benefit.

Based on the law that Plaintiff cited above, Defendant acted inconsistently with the right to arbitrate. See Dkt. #27; Dkt. #30; Dkt. #33. See also *Cabintree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995); *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods., Co., Inc.*, 969 F.2d 585, 587 (7th Cir. 1992). Aside from bringing the instant motion to compel nine months after the filing of this case, he opted to proceed before a nonarbitral tribunal for the resolution of dispute and therefore Defendant has implicitly waived his right to compel arbitration.

Other courts have reached similar conclusions, finding that a party acts inconsistently with its right to arbitrate if the party "[s]ubstantially invoke[s] the litigation machinery before asserting its arbitration right." *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090 (8th Cir. 2007) (citing *Ritzel Communications v. Mid-Am. Cellular Tel. Co.*, 989 F.2d 966, 969 (8th Cir. 1993)) (internal quotation marks omitted). A party substantially "invokes the litigation machinery when, for example, it files a lawsuit on arbitrable claims … or fails to move to compel arbitration and stay litigation in a timely manner." *Lewallen*, 487 F.3d at 1090. Defendant in *Lewallen* sought to compel arbitration after a lawsuit had been filed against it by the consumer. *Id.* at 1090-91. Plaintiff, however, argued that the court should consider defendant's conduct from the time it filed its proof of claim against plaintiff's bankruptcy claim and participated in the bankruptcy matter. *Id.* at 1091-92. The court ultimately held that defendant had waived its right to arbitrate. *Id.* at 1094. Just as the *Lewallen* court considered defendant's conduct dating back to when it initially asserted claims against the consumer, this Court should consider all of the circumstances going

10

back to November 7, 2018 when Plaintiff initially filed this claim and find that Defendant here have similarly waived his right to arbitrate the instant claim.

### IV. Plaintiff's Exclusion of the Second Page of Exhibit C.

Honorable Judge Feinerman in his Minute Entry (Dkt. #39) requested that Plaintiff answer why the second page of the Consumer Loan Agreement was not included in her Exhibit C. The reason for this exclusion is merely because the evidence upon which this Complaint relies is the acceleration provision of the agreement. Plaintiff included only that page because it was the only page relevant to Plaintiff's case.

### CONCLUSION

WHEREFORE, Plaintiff, Karice Goss, individually and on behalf of others similarly situated, respectfully requests that this Court deny Defendant's Motion to Compel Arbitration for the reasons stated above and permit her claims to proceed in litigation.

Respectfully submitted,

*s/ Celetha Chatman*
Celetha Chatman

Celetha Chatman
Michael Wood
***Community Lawyers, LLC***
20 North Clark Street, Suite 3100
Chicago, IL 60602
Ph: (312) 757-1880
Fx: (312) 265-3227
cchatman@communitylawyersgroup.com
mwood@communitylawyersgroup.com

## CERTIFICATE OF SERVICE

I, Celetha C. Chatman, an attorney, hereby certify that on August 13, 2019, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all attorneys of record.

**Dated: August 13, 2019**                                         Respectfully submitted,

                                                                By:   /s/ *Celetha C. Chatman*