UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KARICE GOSS, individually and on behalf of all others similarly situated, )
)
)
Plaintiff, )
)
vs. )
)
GARY A. SMILEY, )
)
Defendant. )

18 C 7407

Judge Gary Feinerman

## **MEMORANDUM OPINION AND ORDER**

Karice Goss brings this putative class action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, alleging that Gary Smiley sent her a collection letter threatening to charge unlawful late fees. Doc. 25. Smiley moves to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* Doc. 36. The motion is granted.

## **Background**

On a motion to compel arbitration, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in [her] favor." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (internal quotation marks omitted).

Goss defaulted on a debt incurred on a AAA Checkmate consumer loan account. Doc. 25 at ¶¶ 6, 11-12. Smiley, an attorney, sent Goss a collection letter on AAA Checkmate's behalf. *Id.* at ¶¶ 7-10, 13-17; Doc. 25-1 at 4. On this and other matters that AAA Checkmate referred to Smiley, "AAA decide[d] whether Smiley c[ould] file suit on any given claim," "AAA ha[d] the final word regarding whether, and for how much Smiley may settle any claims on its behalf," and "AAA decide[d] whether to withdraw any given claim from Smiley." Doc. 37-1 at ¶ 11; *see also* Doc. 37-8 at ¶¶ 2-6, 10.

1

Smiley's letter to Goss stated, in relevant part: "Because of interest, late charges, attorney fees, if any, and other charges that may vary from day to day, the amount due on the day you pay may be greater." Doc. 25-1 at 4. In the operative complaint, Goss alleges under the FDCPA that this statement was false and misleading because late fees could not accrue given the acceleration of Goss's debt under an acceleration provision in the Consumer Loan Agreement governing her relationship with AAA Checkmate. Doc. 25 at ¶¶ 17-26, 35-37; Doc. 37-2 at 2-3.

In moving to compel arbitration, Smiley invokes the Consumer Loan Agreement's arbitration provision, which states in relevant part:

**ARBITRATION AGREEMENT PROVISION INCLUDING WAIVER OF JURY AND CLASS ACTION PARTICIPATION**

Arbitration is a method of deciding disputes outside the court system. This arbitration provision governs when and how any claims or disputes you and we may have will be arbitrated instead of litigated in court. …

You and we agree to arbitrate according to the following terms:

\* \* \*

"Claim" means any dispute, claim or controversy between you and us (including those raised as an initial claim, counterclaim, cross claim, or third party claim) that arises as a result of or has anything to at all to do with: (1) your loan account, (2) this Agreement, (3) any prior loan or agreement you may have had with us or (4) your relationship with us including our attempts to collect your obligation. This term includes (a) disputes about whether this Arbitration Provision is valid or binding or about whether or when it applies, (b) disputes relating to constitutional provisions, statutes, ordinances, regulations, court decisions, compliance with this Agreement, (c) disputes relating to wrongful acts of every type (whether intentional, fraudulent, reckless or just negligent) and (d) any claim or request for injunctive or declaratory relief. The term "claim" does not mean an action brought in small claims court pursuant to Illinois Supreme Court Rules 281-288.

\* \* \*

IF ARBITRATION IS CHOSEN BY EITHER OF US WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM, OR TO ENGAGE IN PRE-ARBITRATION DISCOVERY

EXCEPT AS PROVIDED FOR IN THE APPLICABLE ARBITRATION RULES OR BY THIS ARBITRATION PROVISION. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING[.] …

\* \* \*

… This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.

Doc. 37-2 at 3. Smiley demanded arbitration, Doc. 37-6 at 2, and Goss refused, Doc. 37-7 at 2.

**Discussion**

Section 2 of the FAA states, in relevant part:

A written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Section 2 "mandates enforcement of valid, written arbitration agreements," *Tinder*, 305 F.3d at 733, and "embodies both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract," *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (internal quotation marks omitted). That said, "because arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Ibid.* (internal quotation marks omitted). Accordingly, "[u]nder the FAA, arbitration should be compelled if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017).

Courts "evaluate agreements to arbitrate under the same standards as any other contract," *Tinder*, 305 F.3d at 733, which include "all general principles of state law," *Green v. U.S. Cash*

*Advance Ill., LLC*, 724 F.3d 787, 791 (7th Cir. 2013); *see also Gore*, 666 F.3d at 1032 ("[C]ourts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms.") (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)); *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011) ("Whether the parties have validly agreed to arbitrate is governed by state-law principles of contract formation."); *Stone v. Doerge*, 328 F.3d 343, 345 (7th Cir. 2003) ("[M]ost interpretive disputes [concerning the scope of an arbitration clause] must be resolved under state law."). Smiley argues, and Goss does not dispute, that Illinois law governs. Doc. 37 at 3.

When "determin[ing] whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation," but "[o]nce it is clear … that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore*, 666 F.3d at 1032. Accordingly, "a court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Ibid*. (internal quotation marks omitted); *see also Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.*, 347 F.3d 665, 671 (7th Cir. 2003) ("A trial to determine arbitrability is required … only if the issue that an evidentiary hearing would resolve is fairly contestable.").

Goss does not dispute that the Agreement's arbitration provision is a valid, written arbitration provision. Instead, she offers three arguments why her FDCPA claim against Smiley does not fall within the provision's scope. Each argument fails to persuade.

*Whether the Arbitration Provision Covers FDCPA Claims*. Goss contends that because an FDCPA claim may be brought only against a debt collector and not against a creditor, and

because AAA Checkmate was her creditor, the arbitration provision cannot cover the operative complaint's FDCPA claim. Doc. 40 at 3-5. Goss's contention cannot be reconciled with the provision's text. The provision requires the parties to arbitration any "claim," a term it defines to mean "any dispute, claim or controversy … that arises as a result of or has anything … at all to do with: (1) your loan account, (2) this Agreement, … or (4) your relationship with us including our attempts to collect your obligation." Doc. 37-2 at 3. This definition plainly encompasses Goss's FDCPA claim, which "arises as a result of" and "has … to do with" her "loan account" with AAA Checkmate, her "Agreement" with AAA Checkmate—after all, she alleges that Smiley's collection letter threatened to do something that the Agreement prohibited—and her "relationship" with AAA Checkmate and its "attempts to collect [her] obligation." It follows that Goss's claim falls comfortably within the kind of claims governed by the arbitration provision. *See Gore*, 666 F.3d at 1033 (recognizing that the term "arising out of" in an arbitration provision "reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se") (quoting *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993)); *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002) ("[W]e have naturally been willing to read these admittedly expansive clauses quite broadly to include all manner of claims tangentially related to the agreement, including claims of fraud, misrepresentation, and other torts involving both contract formation and performance.").

That Goss would not have had a viable FDCPA claim against AAA Checkmate, her creditor, is immaterial. The fact that an FDCPA claim against AAA Checkmate would be a clear loser does not mean that the arbitration provision does not cover FDCPA claims—which have been brought, and will continue to be brought, against creditors. *See, e.g., Saenz v. Buckeye*

*Check Cashing of Ill.*, 2016 WL 5080747, at *2-4 (N.D. Ill. Sept. 20, 2016); *Obi v. Chase Home Fin., LLC*, 2012 WL 1802450, at *2-3 (N.D. Ill. May 15, 2012). All it means is that an arbitrator, not a court, would adjudicate the claim and find it wanting. Arbitration provisions cover weak and strong claims alike, so long as the claim falls within the provision's defined scope.

*Whether Smiley Can Enforce the Arbitration Provision*. Goss next argues that because Smiley is not a party to the Agreement, he may not invoke its arbitration provision. Doc. 40 at 5-8. True enough, as a general rule, "[o]nly signatories to an arbitration agreement can file a motion to compel arbitration." *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 734 (7th Cir. 2005) (alteration in original) (quoting *Bishop v. We Care Hair Dev. Corp.*, 738 N.E.2d 610, 619 (Ill. App. 2000)). But state law may allow exceptions to the general rule. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *Scheurer*, 863 F.3d at 754-55. And Illinois law recognizes such an exception where the signatory's agent seeks to compel arbitration. *See Peach v. CIM Ins. Corp.*, 816 N.E.2d 668, 671-72 (Ill. App. 2004) (holding that "a nonsignatory to an arbitration clause can invoke an arbitration agreement under an agency theory"); *see also Warciak v. Subway Rests., Inc.*, 880 F.3d 870, 872 (7th Cir. 2018) (recognizing "assumption, agency, veil piercing, alter ego, waiver, estoppel, third-party beneficiary, and incorporation by reference" as traditional state law principles allowing a nonsignatory to enforce an arbitration agreement); *Equistar Chems., LP v. Hartford Steam Boiler Inspection & Ins. Co. of Conn.*, 883 N.E.2d 740, 747-48 (Ill. App. 2008) (recognizing "(1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing or alter ego, (5) estoppel, and (6) third-party-beneficiary status" as contract-based theories that "could afford a basis for a nonsignatory to invoke an arbitration agreement signed by others").

6

As noted, the record establishes that "AAA decide[d] whether Smiley c[ould] file suit on any given claim," "AAA ha[d] the final word regarding whether, and for how much Smiley may settle any claims on its behalf," and "AAA decide[d] whether to withdraw any given claim from Smiley." Doc. 37-1 at ¶ 11; *see also* Doc. 37-8 at ¶¶ 3-5. Given this, Smiley plainly was acting as AAA Checkmate's agent when he sent Goss the collection letter. *See* Restatement (Third) of Agency § 1.01 (2006) (defining "agency" as a "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act"); *see also NECA-IBEW Rockford Local Union 364 Health & Welfare Fund v. A & A Drug Co.*, 736 F.3d 1054, 1058 (7th Cir. 2013) ("[T]he federal common law of agency, Illinois agency law, and the Restatement of Agency are all in accord on general agency principles, thereby obviating choice-of-law concerns."). It follows under Illinois law that Smiley is entitled to invoke the arbitration provision in AAA Checkmate's agreement with Goss. The case Goss cites for the contrary proposition, *Taylor v. Advanced Call Center Technologies, LLC*, 2017 WL 6988652 (N.D. Ill. Dec. 20, 2017), is inapposite because it applied Utah law, not Illinois law. *See id*. at *2 ("[A]s a matter of Utah law, an agency relationship with a principal to a contract does not give the agent the authority to enforce a contractual term for the agent's own benefit.") (internal quotation marks and emphasis omitted).

*Whether Smiley Waived His Right to Seek Arbitration*. Goss next contends that Smiley waived his right to arbitrate by litigating this case in court for nine months before moving to compel arbitration. Doc. 40 at 8-10. Granted, a party can waive arbitration by failing to timely move to compel arbitration. *See Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995). But the operative complaint is Goss's amended complaint, and as

Goss's counsel acknowledged on the record, Doc. 44, the arbitration provision plainly did not cover the original complaint because the claim asserted there—unlike the entirely different claim brought in the amended complaint—did not rest on any of the Agreement's provisions. Doc. 1 at ¶¶ 19-27, 34. Smiley demanded arbitration less than two months after Goss filed her amended complaint, Doc. 25; Doc. 37-6 at 2, and therefore did not waive his right to seek arbitration. *See Welborn*, 301 F.3d at 637 (holding that a party did not waive its right to arbitrate where it "moved to compel arbitration less than two months after the lawsuit was filed").

**Conclusion**

Because Goss's FDCPA claim falls within the arbitration provision's scope, because Smiley may enforce the provision, and because Smiley has not waived his right to arbitrate, Smiley's motion to compel arbitration is granted. If Goss wishes to pursue her claim against Smiley, she must do so in arbitration. This suit is stayed pending resolution of the arbitration. *See IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 528 (7th Cir. 1996) ("In a suit 'upon any issue referable to arbitration under an agreement in writing for such arbitration,' the court, upon determining that the issue involved in the suit is indeed referable to arbitration, shall upon application of a party stay the judicial proceeding.") (quoting 9 U.S.C. § 3); *Kroll v. Doctor's Assocs., Inc.*, 3 F.3d 1167, 1171 (7th Cir. 1993) (holding that 9 U.S.C. § 3 "plainly requires that a district court stay litigation where issues presented in the litigation are the subject of an arbitration agreement") (internal quotation marks and emphasis omitted). If Goss does not expeditiously take the steps necessary to commence arbitration, this suit will be dismissed.

October 8, 2019

United States District Judge